HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| LARRY BARNEY, a single person,<br><br>        Plaintiff,<br><br>    v.<br><br>WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST, An Employee Benefit Plan Entity,<br><br>        Defendant. | No. C06-5589RBL<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

This matter is before the Court on Defendant's Motion for Summary Judgment [Dkt. #14]. Defendant Western Conference of Teamsters Pension Trust seeks a ruling as a matter of law that Plaintiff Larry Barney's claim must be dismissed because it is not supported by sufficient evidence. For reasons explained below, the Court GRANTS this motion.

## BACKGROUND

Mr. Barney brings this action to determine whether Western Conference of Teamsters Pension Trust ("WCTPT"), trustee for the Western Conference of Teamsters Pension Plan ("Plan"), violated the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), when WCTPT treated Mr. Barney differently from Michael Pomerenke, another similarly situated reemployed Plan beneficiary. The

parties disagree about whether the factual inquiry into the job duties of the two similarly situated employees was sufficient to reach dissimilar results.

Between March 1975 and December 2003 Mr. Barney worked in "covered employment" as a union truck driver. During this time Mr. Barney drove for Glazer Beverages, Associated Grocers, and Ruan Transportation—which took over Associated Grocers' transportation department in 2003. Ex. A to Ditter Decl. at 11 [Dkt. #16]. In December 2003, Mr. Barney retired from his position at Ruan as a truck driver and union dispatcher, and began receiving monthly pension benefits under the Plan in January 2004. Ruan reemployed Mr. Barney as a truck driver and dispatcher in September 2004.

In July 2005, ten months after reemployment, Mr. Barney submitted to WCTPT's Northwest Administrative Office ("Administrative Office") a *Request for Evaluation of Reemployment* to help him "understand what the Plan considers to be Suspendible Employment." Ex. A to Ditter Decl. at 32. On his request, Mr. Barney noted that Mr. Pomerenke had also worked as a union dispatcher at Ruan before retiring and that he was able to work full-time while collecting his entire monthly benefit.[1] *Id.*, at 33. Upon consideration of his request, the Administration Office determined Mr. Barney's reemployment had

---

[1] Michael Pomerenke, like Mr. Barney, was a driver and union dispatcher with Associated Grocers. When Ruan took over Associated Grocer's transportation department Mr. Pomerenke was offered a non-union managerial position with Ruan as a supervisor. After being mistakenly informed by the local union that he could not retire from Associated Grocers, accept the supervisor position *and* receive his pension benefits, Mr. Pomerenke continued to work in covered employment at Ruan until he retired in May 2004. Mr. Pomerenke then contacted the Administrative Office requesting review of his proposal to retire from covered employment as a driver/dispatcher while continuing to work for Ruan as a supervisor. Mr. Pomerenke's request was denied, and he was informed that all applicable severance, suspendible employment rules would apply to any reemployement. Later, however, after reviewing Mr. Pomerenke's *Request for Evaluation of Reemployment*, the Administrative Office determined that Mr. Pomerenke's new position would not constitute suspendible employment. After receiving this information Mr. Pomerenke told Ruan he was able to accept the position. Over a month later WCTPT informed Mr. Pomerenke that the new position still required him to comply with the Plan's severance rules. Mr. Pomerenke appealed this decision, asking that the severance requirement be waived because of the disadvantages he had suffered as a result of the union's misinformation and the delay in the Administrative Office's relying information. Ex. C to Sander Decl. at 173-75. WCTPT agreed to treat Associated Grocers as Mr. Pomerenke's last covered employer, as well as to waive the Plan's severance rules. Ex. A to Ditter Decl. at 22.

ORDER
Page - 2

triggered the Plan's suspendible employment clause,[2] and communicated this to Mr. Barney in a letter dated August 15, 2005. *Id.*, at 28-31. WCTPT later contacted Mr. Barney stating it had reason to believe he had worked more than the permissible 85 hours over the month of July 2005, and that disbursement of his July's benefits was suspended pending further investigation. Ex. A to Ditter Decl. at 28-30. Mr. Barney appealed this decision. Despite WCTPT's investigation exonerating Mr. Barney and its disbursing all withheld benefits, Ex. A to Ditter Decl. at 37, Mr. Barney sustained his appeal by asserting that similarly situated reemployed Plan beneficiaries should be treated alike, thus, his employment should not be deemed suspendible if Mr. Pomerenke's was not. *E.g.*, Ex.I to Sander Decl. at 191 [Dkt. #15]; Ex. A to Ditter Decl. at 16.

WCTPT's Benefits Review Committee of the Board of Trustees ("BRC") considered Mr. Barney's appeal at its March 2006 meeting. BRC was presented with an appeal packet, which included information concerning Mr. Barney's theory about Mr. Pomerenke and himself, as well as with information from the Administrative Office about its prior evaluations and the dissimilarities between the issues appealed by Mr. Barney and Mr. Pomerenke. Ditter Decl. at 6 ¶ 31, 32. BRC affirmed the Administrative Office's determination that Mr. Barney's reemployment position was suspendible employment, and that his situation was distinguishable from that of Mr. Pomerenke. *E.g.*, Ex. C to Ditter Decl. at 48; Ex. D to *Id*. at 50-51.

---

[2] Suspendible Employment is work . . . that meets all of the following conditions:
- It is in any Industry covered by the Plan, in the case of work that is Covered Employment.
- It is in any Industry in which the Pensioner was employed at any time as a Covered Employee, in the case of work that is not Covered Employment.
- It is in a trade or craft in which the Pensioner was employed at any time as a Covered Employee.
- It is in the geographic area covered by the Plan.

Ex. B to Sander Decl. at 143. *E.g.*, 26 U.S.C. § 411(a)(3)(B)(ii); 29 U.S.C. § 1053(a)(3)(B)(ii); 29 U.S.C. § 2530.203-3(c)(2). The result of meeting the criteria for suspendible employment is that the plan beneficiary is limited to working not more than 85 hours per month. Ex. B to Sander Decl. at 141.

ORDER
Page - 3

Mr. Barney was informed of, and exercised, his right to bring a civil action under 29 U.S.C. § 1132 (a)(1) to review WCTPT's determination.

## DISCUSSION

**I. Summary Judgment**

### A. Standard of Review

A beneficiary under an ERISA-governed plan may bring a civil action to enforce his rights under the plan, as well as to clarify his rights to future benefits under the plan. 29 U.S.C. § 1132(a)(1)(B). The standard of review for a "denial of benefits challenged under § 1132(a)(1)(B) is *de novo* standard unless the benefit plan gives the administrator . . . discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire and Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). This "default" standard means that in order for a plan administrator's decision to be given deference by the court, the plan administrator must "show that the plan gives it discretionary authority." *Kearny v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999), *cert. denied*, 528 U.S. 964 (1999). Only after the administrator makes this showing of unambiguous reservation of discretion, will the court review the trust administrator's decision for abuse of discretion.

By its express terms, the Plan reserves the exclusive authority to interpret and administer the Plan's terms to WCTPT and its delegated administrative bodies. Ex. B to Sander Decl. at 102. Additionally, in *Johnson v. Trustees of W. Conf. of Teamsters Pension Trust*, 879 F.2d 651, 654 (9th Cir. 1989), the Ninth Circuit found the plan—a precursor to the Plan at issue in this case—conferred discretionary power on WCTPT. Accordingly, WCTPT's decision concerning Mr. Barney's will be reviewed for abuse of discretion.

ERISA plan administrators abuse their discretion in making benefit determinations by: rendering decisions without an explanation; construing provisions of the plan in ways that conflict with the plan's plain language; or relying on "clearly erroneous findings" in making a decision. *Benedixen v. Standard Ins.*

*Co.*, 185 F.3d 939, 944 (9th Cir. 1999) (citations omitted).

Mr. Barney alleges the disparate treatment between Mr. Pomerenke and himself was the result of WCTPT's reliance on "clearly erroneous findings." He argues WCTPT failed to adequately investigate the two men's work duties and placed too much emphasis on each of the gentleman's job title and job description.

**B. Summary Judgment Standard**

Summary Judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party is entitled to summary judgment if, after satisfying its initial burden, the non-moving party fails to present specific facts showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). Factual disputes whose resolution would not affect the outcome of the suit are irrelevant to the consideration of a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In other words, summary judgment should be granted where the nonmoving party fails to offer evidence from which a reasonable finder of fact could return a decision in the nonmoving party's favor. *Triton Energy*, 68 F.3d at 1220.

The above described summary judgment standards, however, do not apply when certain ERISA claims are raised. As the *Benedixe*n Court articulated:

> Where the discretion to grant or deny [ERISA] benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.

*Benedixen*, 185 F.3d at 942.  Thus, the Defendant's Motion for Summary Judgment is determined by the presence of an abuse of discretion, or lack thereof.  *Id.*

When reviewing an ERISA administrator's decision for abuse of discretion the court is not to function as a substitute for the plan administrator, rather the court is limited to reviewing the administrative record before the trustees at the time it rendered its decision.  *Taft v. Equitable Life Assur. Soc.*, 9 F.3d at 1469, 1471-72 (9th Cir. 1994) (citations omitted).  To do otherwise, would permit the court to review for abuse of discretion the administrator's failure to consider information that was not before the administrator at the time the decision in controversy was rendered.  *Id.,* at 1472.  Only in conflict of interest cases, in which the beneficiary's employer is also the plan's administrator, may the court consider evidence outside of the administrative record—an issue not present in the instant case.  *Tremain v. Bell Indus., Inc.*, 196 F.3d 970, 977 (9th Cir. 1999).  This Court reviews only those documents which were before WCTPT at the time it determined that Mr. Barney's reemployment was suspendible employment, and that his position was distinguishable from that of Mr. Pomerenke.

### C. **Whether WCTPT Abused its Discretion**

WCTPT did not abuse its discretion in determining that Mr. Barney's reemployment was suspendible employment and distinguishable from Mr. Pomerenke's position.  In the absence of evidence indicating that WCTPT's benefit decisions were not made in good faith or were an abuse of its discretion, WCTPT did not abuse its discretion by relying on clearly erroneous findings.

WCTPT's determination that Mr. Barney's reemployment at Ruan in the exact same job positions he held at the time he retired met the Plan's conditions for suspendible employment was not arbitrary or capricious.  Focusing only on the facts concerning Mr. Barney's retirement and reemployment, it is clear that Mr. Barney's retirement and eventual return to the same covered employment positions at Ruan triggered and met each of the conditions to the Plan's suspendible employment clause.  Ex. B to Sander

Decl. at 143.  It is neither arbitrary nor capricious for plan administrators to apply the Plan's express terms, thus, WCTPT's determination that Mr. Barney's post-retirement employment with Ruan was suspendible employment was not an abuse of its discretion.

Under 29 C.F.R. § 25360.503-1(b)(5) ERISA plans are to establish and maintain reasonable claims procedures, including "administrative processes and safeguards designed to ensure and verify that benefit claim determinations are made in accordance with governing plan documents and that, *where appropriate*, the plan provisions have been applied consistently with respect to similarly situated claimants." (emphasis added).  While Mr. Pomerenke is not a party to this action, nor is his reemployment status before this Court, the superficial similarities between his and Mr. Barney's employment status warrant review.  Thus, this Court must address whether, based on the administrative record, there was a reasonable basis for WCTPT to determine Mr. Barney's reemployment differed enough from Mr. Pomerenke's to justify disparate outcomes.

Differences amongst benefit determinations are not per se arbitrary.  Rather, an ERISA plan administrator's deviation from routinely-made decisions appears to be "arbitrary and capricious on its face." *Oster v. Barco*, 869 F.2d 1215, 1218 (9th Cir. 1988) (citing *Hurn v. Re. Fund Trust of the Plumbing, Heating & Piping Indus. of S. Cal.*, 703 F.2d 386, 390 (9th Cir.1983)).  In order "to survive review under the arbitrary and capricious standard," however, the administrator must "advance some reason for its decision." *Id*.  WCTPT advanced such a reason (the union's providing incorrect information and the Administrative Office's untimely response.  *See* n. 1 *supra*.) for its decision to waive the Plan's six-month severance rule for Mr. Pomerenke.  Ex. A to Ditter Decl. at 22-23.  When Mr. Barney sought to compare his reemployment situation with that of Mr. Pomerkene, WCTPT restated its reasons for its deviation from the Plan in its treatment of Mr. Pomerkene, and how the circumstances surrounding Mr. Barney's reemployment were substantially dissimilar to not warrant similar treatment.     Unlike Mr. Barney's

ORDER
Page - 7

appeal, which concerns the Plan's suspendible employment clause, Mr. Pomerenke's appeal involved the Plan's severance rule.  WCTPT's Office of Administration found that Mr. Pomerenke's proposed reemployment as a supervisor for Ruan would not qualify as suspendible employment because it did not meet the Plan's conditions for suspendible employment.  Ex. E to Sander Decl. at 182.  Additionally, WCTPT determined Mr. Pomerenke's post-retirement employment position to be sufficiently different in trade and craft from his former covered employment in determining that his reemployment position did not qualify as suspendible employment.   This Court will not disturb this determination because it is beyond this Court's purview to review WCTPT's evaluation of Mr. Pomerenke.  BRC, however, in making its determination that Mr. Barney's position did not warrant similar treatment to Mr. Pomerenke stated that it looked to the claims at issue in both appeals.  While Mr. Barney focused on suspendible employment in conjunction with his return to the exact same job position and duties, Mr. Pomerenke's appeal concerned his ability to take a new non-covered employment position and to waive the severance requirement.  Mr. Barney's claims that WCTPT's review and reasoning "elevated form over substance", Pl.'s Resp. to Mot. Summ. J. 6, ignores the importance of the differences in the issues raised for review, which, according to the administrative record, effectively dissolved the similarities between Mr. Barney and Mr. Pomerenke. Ex. C to Ditter Decl. at 48.

It is only required that this Court review for abuse of discretion WCTPT's evaluation of Mr. Barney's claim that he and Mr. Pomerenke are similarly situated.  Based on the administrative record it was reasonable for WCTPT to find that Mr. Barney was not in the same position as Mr. Pomerenke.

**II. Attorneys' Fees and Costs**

Both parties seek attorney's fees and costs.  In ERISA actions, the trial court may award attorneys' fees at its discretion.  29 U.S.C. § 1132(g)(1). The Ninth Circuit established five factors for courts to consider when exercising this discretion:

> (1) the degree of the opposing parties' culpability or bad faith; (2) the ability of the opposing parties to satisfy an award of fees; (3) whether an award of fees against the opposing parties would deter others from acting under similar circumstances; (4) whether the parties requesting fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA; and (5) the relative merits of the parties' positions.

*Hummell v. Rykoff*, 634 F.2d 446, 453 (9th Cir. 1980) (citing *Eaves v. Penn*, 587 F.2d 453, 465 (10th Cir. 1978)).  These factors are to be construed liberally to promote ERISA's purpose of "'protecting participants in employee benefit plans.'"  *McElwaine v. US West, Inc.*, 176 F.3d 1167, 1172 (9th Cir. 1999) (quoting *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir.1983)).  Courts may, however, award costs for both plaintiffs and defendants.  *See*, *e.g.*, *Carpenters S. Cal. Admin. Corp. v. Russell*, 726 F.2d 1410, 1416 (9th Cir. 1984); *Operating Engineers Pension Trust v. Gilliam*, 737 F.2d 1501, 1506 (9th Cir. 1984).

In applying the *Hummell* factors to its review of the administrative record, the Court finds no basis for awarding attorney's fees and costs.  First, in light of the administrative record, this Court finds no culpability or bad faith by either party.  Second, the prevailing party, WCTPT, is able to adequately cover its costs of representation, while Mr. Barney likely lacks the ability to do so.  Third, there is no conduct by the plaintiff, and or similarly situated persons, which should be deterred by granting WCTPT attorney's fees.  In fact, granting such costs would likely have a chilling effect on pension plan beneficiaries seeking to vindicate their rights under their ERISA plans.  Fourth, *Hummell* Factor (4) is inapplicable because this ruling encourages the application of the plan's express terms, therefore, it does not have a long-term impact on the beneficiaries of the Plan except for continuity of application.  Finally, as discussed above, the Court finds no reason to award fees based on the relative merits of the parties' positions.

The Defendant's Motion for Summary Judgment [Dkt. #14] is GRANTED.

IT IS SO ORDERED.

DATED this 6th day of July, 2007.

_____
RONALD B. LEIGHTON
UNITED STATES DISTRICT JUDGE